UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| KEISHA LANELLE THOMAS | CIVIL ACTION 1:16-CV-01017 |
| VERSUS | JUDGE TRIMBLE |
| CAROLYN W. COLVIN,[1] COMMISSIONER | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

I.   Background

   A.   Procedural Background

Keisha Lanelle Thomas ("Thomas") filed an application for Social Security Income benefits ("SSI") on December 10, 2013 (Doc. 9-1, pp. 105, 119/381), alleging a disability onset date of October 15, 2012 (Doc. 9-1, pp. 107, 131/381) due to severe hip pain and nerve damage (Doc. 9-1, p. 134/381). That application was denied by the Social Security Administration ("SSA") (Doc. 9-1, p. 59/381).

A *de novo* hearing was held before an administrative law judge ("ALJ") on January 20, 2015, at which Thomas appeared with her attorney and a vocational expert ("VE") (Doc. 9-1, p. 26/381). The ALJ found that Thomas has not worked since December 10, 2013 (the application date) (Doc. 9-1, p. 18/381). The ALJ further found that Thomas can do the full range of light work, despite her severe impairments of degenerative disk disease of the cervical spine and obesity (Doc. 9-1, p. 19/381). The

---

[1] Carolyn Colvin was replaced by Acting Commissioner of Social Security Nancy A. Berryhill on January 23, 2017.

ALJ concluded that Thomas was not disabled at any time from December 10, 2013 through the date of his decision on February 24, 2015 (Doc. 9-1, pp. 21-22/381).

Thomas requested a review of the ALJ's decision, but the Appeals Council declined to review it (Doc. 9-1, p. 4/381), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Thomas next filed this appeal for judicial review of the Commissioner's final decision. Thomas raises the following issues for review (Doc. 10):

1. The ALJ failed to properly weigh the medical evidence of record, which requires remand for further administrative proceedings.

2. The ALJ's finding as to Thomas's residual functional capacity is unsupported by substantial evidence.

3. The ALJ's hypothetical questions posed to the VE were erroneous and incomplete. The ALJ's reliance on the VE's testimony was error requiring remand for further administrative proceedings.

The Commissioner filed a brief in response to Thomas's appeal (Doc. 11). Thomas's appeal is now before the Court for disposition.

B.  Factual Background

1.  Medical Records

In October 2012, Thomas suffered a gunshot wound to her right thigh and went to the emergency room with hemorrhaging but no vascular injury (Doc. 9-1, p. 293-98, 303, 317-18, 334/381). Thomas was 5'6" tall and weighed 230 pounds (Doc. 9-1, p. 301/381). Thomas's wound was treated, she was prescribed medications and given a tetanus shot, and she was discharged (Doc. 9-1, pp. 304, 311-12, 317-18/381).

Thomas was admitted to the emergency room of the Huey P. Long Medical Center in November 2012 for joint pain in her pelvic region and thigh, as well as an open wound in her right hip where she had been shot (Doc. 9-1, p. 175/381). Thomas reported having undergone two rounds of antibiotics for the wound, but had gradually worsening pain that was aggravated by walking, bending, and standing (Doc. 9-1, p. 177/381). Thomas also reported smoking half a pack of cigarettes daily (Doc. 9-1, p. 176/381). Thomas's hip was swollen and tender, but she had a normal range of motion and normal strength (Doc. 9-1, p. 178/381). X-rays of the pelvis showed no fractures or dislocations and normal joints (Doc. 9-1, p. 184/381). Thomas was referred to the surgery clinic at her request (Doc. 9-1, p. 179/381).

Thomas was readmitted to the emergency room at Huey P. Long Medical Center in March 2013, with complaints of low back pain and right leg pain where she was shot (Doc. 9-1, p. 185/381). Thomas was diagnosed with pain in her joint, pelvic region, thigh, and low back (Doc. 9-1, p. 188/381). New x-rays showed a large metal fragment in her upper thigh from the gunshot wound, but no evidence of fractures or dislocations (Doc. 9-1, p. 194/381).

Thomas was evaluated by Dr. Larry Parker on August 22, 2013 for complaints of right leg pain and abdominal pain (Doc. 9-1, p. 225/381). Dr. Parker diagnosed musculoskeletal pain and sciatica, and prescribed diclofenac sodium (Voltaren) and gabapentin (Neurontin) (Doc. 9-1, pp. 225-26/381).

Thomas went to the emergency room at Huey P. Long Hospital again on August 27, 2013, complaining of chronic right hip/upper leg pain, and tingling in her

right foot (Doc. 9-1, p. 195/381). Thomas reported a surgeon had told her she needed to have the bullet removed, but she could not pay for the surgery (Doc. 9-1, p. 195/381). Thomas described her pain as constant, moderate, aching, burning, and tingling (Doc. 9-1, p. 196/381). Thomas also reported the symptoms were aggravated by activity, bearing weight, and palpation (Doc. 9-1, p. 196/381). Thomas had not tried taking anything for her symptoms (Doc. 9-1, p. 196/381). Thomas was diagnosed with worsening pain in her joint, pelvic region, and thigh (Doc 9-1, p. 197/381).

A CT scan in October 2013 showed a gunshot wound and retained bullet fragment in her right thigh, with radiculopathy (Doc. 9-1, p. 105/381).

In April 2014, Thomas was diagnosed with cervical and lumber strain at Christus St. Francs Cabrini Hospital after being involved in a multi-vehicle accident (Doc. 9-1, pp. 216-18/381). Cervical spine x-rays and lumbar spine x-rays both showed well-maintained vertebral body heights and alignment, no acute fracture or dislocation, and grossly unremarkable soft tissues (Doc. 9-1, pp. 222-23/381). Thomas was prescribed Norco and Valium (Doc. 9-1, p. 219-381).

Dr. Gerald Leglue, Jr. evaluated Thomas on April 30, 2014 (Doc. 9-1, pp. 231, 280/381). Dr. Leglue noted Thomas's continued complaints of neck and low back pain, right leg pain, and right arm paresthesia (Doc. 9-1, p. 231/381). Thomas's right leg pain existed before the motor vehicle accident and was secondary to the 2012 gunshot wound (Doc. 9-1, p. 231/381). Thomas also reported she had a previous motor vehicle accident in 2011 and was seen for low back pain in the emergency room on one occasion, and it had resolved (Doc. 9-1, p. 231/381). Thomas had spasms in the right

cervical paraspinous muscle, bilateral upper trapezius muscles, bilateral levator scapulae muscles, bilateral rhomboideus minor muscles, bilateral teres minor muscles, and the right infraspinatus muscle (Doc. 9-1, p. 231/381). Thomas's cervical ranges of motion were between normal and 75% (some with pain) (Doc. 9-1, p. 231/381). Thomas's lower back motor examination was within normal limits (Doc. 9-1, p. 232/381). Dr. Leglue diagnosed cervical strain, right rotator cuff strain, possible intermittent cervical radiculopathy, lumbar facet sprain, right piriformis strain, right iliolumbar ligament sprain, and a history of gunshot wound to the right thigh (Doc. 9-1, p. 232/381). Dr. Leglue prescribed a Medrol Dosepak followed by an NSAID, Norco, Valium, and physical therapy three times per week for three weeks (Doc. 9-1, p. 232/381). By May 2014, Thomas was beginning to feel better (Doc. 9-91, pp. 248, 250/381).

In June 2014, Thomas continued to complain of neck and back pain with right arm and leg symptoms with physical therapy (Doc. 9-1, p. 263/381). Thomas was prescribed Mobic (anti-inflammatory), Norco, and Valium, and ordered follow-up MRIs (Doc. 9-1, p. 263/381).

In July 2014, Dr. Gerald Dzurik, a physician, consulted with the SSA (without examining Thomas) concerning Thomas's diagnoses (Doc. 9-1, p. 54/381). Dr. Dzurik found Thomas's medical records indicated she has the following limitations: (1) she can frequently lift/carry up to 10 pounds; (2) she can occasionally lift/carry (including upward pulling) up to 20 pounds; (3) she can stand/walk up to four hours in an eight-hour day; (4) she can sit about six hours in an eight-hour day; (5) she can do unlimited

pushing and pulling except as previously set forth; (6) she can occasionally climb ramps/stairs, ladders, ropes, and scaffolds; (7) she can occasionally kneel, crouch, or crawl; (8) she can frequently stoop; and (9) she can do unlimited balancing (Doc. 9-1, pp. 53-54/381).

In August 2014, Thomas was evaluated by Dr. Michael Drerup, a neurosurgeon (Doc. 362/381). Thomas complained of right lateral cervical pain radiating into the trapezius and deltoid regions, the medial aspect of the upper arm, and the anterior aspect of the forearm, including numbness and tingling to the right hand (Doc. 9-1, p. 362/381). Thomas said her symptoms worsened with prolonged standing, laying supine, driving, and cold and damp weather (Doc. 9-1, p. 362/381). Thomas's symptoms improved with walking, heat application, and massage (Doc. 9-1, p. 362/381). Dr. Drerup noted that Thomas had been evaluated by Dr. Leglue and undergone acupuncture (Doc. 9-1, p. 362/381).

Dr. Drerup found Thomas's finger dexterity was normal, rapid alternating movements were normal, tandem gait was uncoordinated, toe and heel walking were normal, her gait was slow and cautious, there was no paraspinal muscle spasm, she had decreased right hand strength but normal strength in the both upper extremities and shoulders, and normal sensation except for decreased vibratory sensation (Doc. 9-1, p. 364/381). An MRI showed a small central disc protrusion to the right at C3-4, a small to moderate central disc protrusion to the left at C5-6, and straightening of normal cervical lordosis (Doc. 9-1, pp. 365, 375/381). Dr. Drerup administered a selective root block at C6 right (Doc. 9-1, pp. 366, 376/381). Thomas also received a

6

cervical/thoracic spinal nerve root block injection for radiculopathy down her right arm to her fingers (Doc. 9-1, pp. 380-81/381).

In October 2014, Dr. Leglue made a residual functional capacity assessment of Thomas (Doc. 9-1, p. 369/381). Dr. Leglue found Thomas has cervical radiculopathy that causes pain and weakness, and gave her a prognosis of fair to guarded (Doc. 9-1, p. 369/381). Thomas's medication side effects are sedation, drowsiness, nausea, and constipation (Doc. 9-1, p. 369/381). Dr. Leglue stated that, during an eight hour workday, Thomas would need to recline or lie down for more than the typical 15 minute breaks and 30-60 minute lunch, and would need to take unscheduled breaks, for 15 to 30 minutes, every one to two hours (Doc. 9-1, p. 369/381). Thomas can sit 30 minutes at a time and up to six hours in an eight hour day, stand/walk 5 minutes at a time and up to one hour in an eight hour day (Doc. 9-1, p. 369/381). Dr. Leglue also stated Thomas can lift up to 10 pounds occasionally, but never more than that (Doc. 9-1, p. 370/381).

Thomas also has some limitations in repetitive reaching, handling, and fingering. She can grasp, turn, or twist objects with either hand up to 25 % of the workday; do fine finger manipulation up to 10% of the workday; and reach up to 10% of the workday (Doc. 9-1, p. 370/381). Dr. Leglue stated Thomas is not physically capable of working an eight hour day for five days a week on a sustained basis (Doc. 9-1, p. 370/381). Finally, Dr. Leglue stated he had treated Thomas since April 13, 2014 and believed she has had the described limitations since April 27, 2014 (Doc. 9-1, p. 371/381).

## 2. Administrative Hearing.

At her January 20, 2015 administrative hearing, Thomas testified she is 5'6" tall, weighs 217 pounds, and is right-handed (Doc. 9-1, p. 29/381).

Thomas finished ninth grade in high school, then eleventh grade in an alternative school (Doc. 9-1, p. 33/381). Thomas testified she can read, write, add, and subtract (Doc. 9-1, p. 33/381). The last time Thomas worked was in about 2010, doing housekeeping and laundry at a nursing home for about three months (Doc. 9-1, p. 33-34/381). Thomas testified that she had a miscarriage and never returned to work (Doc. 9-1, p. 33-34/381). Thomas testified she has also worked as a cashier at a Dollar General store and a casino (Doc. 9-1, p. 34/381).

Thomas testified she has lost 30 pounds since her administrative proceedings began (Doc. 9-1, p. 30/381). Her leg bothers her the most, but her neck bothers her when she does not have medication (Doc. 9-1, p. 30/381). The pain goes from her neck down her right arm, causing numbness in her arm, when she has to move her arm more than one time or hold it up longer than ten minutes (Doc. 9-1, p. 30/381).

Thomas has pain in her right leg and lower back for which she gets steroid injections (Doc. 9-1, p. 31/381). Thomas does not use a cane, walker, or back brace (Doc. 9-1, p. 31/381). Thomas cannot walk or bend certain ways, and cannot stand for long before pain radiates from her lower back down her right leg, and numbness radiates from her lower back to the back of her right leg (Doc. 9-1, p. 31-32/381). Thomas has to sit down to cook, bathe, comb her hair, and use the bathroom, and her fiancé assists her (Doc. 9-1, p. 32/381).

Thomas lives with her fiancé, his daughter, and her niece (Doc. 9-1, p. 35/381). Thomas's fiancé works (Doc. 9-1, p. 35/381). On a typical day, Thomas gets up around 6:30 a.m. (on school days), gets the children up, and lays down again (Doc. 9-1, p. 32/381). Thomas gets up again to see if the children are ready for school, and sits on the porch while they wait for the bus (Doc. 9-1, p. 32/381). After they leave, Thomas lays down again for a little while, then gets up to clean a little bit, sit down, and cook (Doc. 9-1, p. 33/381). After the children return from school, Thomas helps them with homework (Doc. 9-1, p. 33/381). Thomas goes to church most Sundays, unless she was not able to sleep the night before, and also visits her mother (Doc. 9-1, p. 37/381). Since her mother lives 45 minutes away, Thomas's fiancé has to stop the car at least once to let Thomas out to stretch her legs, which become numb (Doc. 9-1, p. 37-38/381). Thomas also testified that a two-hour church service is difficult for her because she has to sit too long, then stand up to sing (Doc. 9-1, p. 39/381).

Thomas testified that she can sit for 20 to 25 minutes before her back and right leg become uncomfortable (Doc. 9-1, p. 39/381). Thomas has to stand for seven or eight minutes to restore feeling in her right leg (Doc. 9-1, p. 40/381). Thomas can stand for 25 to 30 minutes (Doc. 9-1, pp. 40-41/381). Thomas can walk for about ten minutes or for about half a block (Doc. 9-1, p. 41/381). Thomas can lift about five pounds (Doc. 9-1, p. 42/381). Thomas testified she can lift a gallon of milk with her left hand but not with the right hand (Doc. 9-1, p. 42/381).

Thomas testified she is "not really" able to drive (Doc. 9-1, p. 29/381). Thomas explained she has difficulty holding her right arm up to drive, and her medication

9

impairs her ability to drive (Doc. 9-1, p. 34/381). Thomas's fiancé usually takes her to her medical appointments and helps her shop for groceries (Doc. 9-1, p. 35/381).

Thomas testified she can reach overhead for seven to ten minutes before her arm starts hurting (Doc. 9-1, pp. 36-37/381). Thomas cannot reach to the front, the side, or downward for more than ten minutes (Doc. 9-1, p. 37/381). Thomas's right arm becomes numb when she uses it (Doc. 9-1, p. 37/381).

Thomas testified that she falls asleep without difficulty but has trouble staying asleep because her legs get restless (Doc. 9-1, p. 42/381). Thomas is able to sleep three or four hours in a recliner if she leans to the left (Doc. 9-1, p. 42/381).

The VE testified that Thomas's past work as a cashier, DOT 211.462-010[2], is light work[3] and SVP 2[4] (Doc. 9-1, p. 44/381). Thomas's past work as a housekeeper, DOT 323.687-018, is medium work and SVP 2 (Doc. 9-1, p. 44/381).

---

[2] Dictionary of Occupational Titles.

[3] "Medium work" is defined in 20 C.F.R. § 404.1567(c) and § 416.967(c) as follows: "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary work and light work."

"Light work" is defined in 20 C.F.R. § 404.1567(b) and § 416.967(c) as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."

The Social Security regulations define sedentary work in §404.1567(a) as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

[4] SVP, or Specific Vocational Preparation, refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. See Dictionary of Occupational Titles ("DOT"), App. C (rev.

The ALJ posed a hypothetical to the VE that involved an individual of Thomas's age, education, and work experience, and who has the following limitations: lift no more than ten pounds occasionally; stand/walk up to one hour in an eight hour day; sit up to six hours in an eight hour day; and can do less than occasional handling and fingering bilaterally (Doc. 9-1, p. 44/381).  The VE testified those job limitations are less than sedentary (Doc. 9-1, p. 45/381).  Such a person could not do any of Thomas's past work, and there are no other jobs she could perform in the national or regional economies (Doc. 9-1, p. 45/381).

C.  ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a).  The sequential process required the ALJ to determine whether Thomas (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work.  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  See Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120 (1995) (citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir. 1987)).

---

4th ed.1991).  Unskilled work usually requires less than thirty days training, which corresponds to an SVP of 1 or 2; semi-skilled work corresponds to an SVP of 3 or 4; and skilled work requires an SVP level of 5 or higher.  Social Security Ruling 00–4p, 2000 WL 1898704, at *3 (2000).  See also generally 20 C.F.R. § 404.1568.

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. See Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Thomas has not engaged in substantial gainful activity since December 10, 2013, and she has severe impairments of degenerative disk disease of the cervical spine and obesity, but does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Doc. 9-1, p. 18/381). The ALJ then found that, as of the date of his opinion, February 24, 2015, Thomas was still able to perform the full range of light work and, therefore, could perform her past relevant work as a cashier (Doc. 9-1, pp. 19, 21-22/381). The sequential analysis thus ended at Step 4, with a finding that Thomas was not disabled (Doc, 9-1, p. 22/381).

## II.    Law and Analysis

### A.    Scope of Review

In considering Social Security appeals, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. See McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. See

Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. See Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. See Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. See Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981); see also Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings that are not supported by substantial evidence and to correct errors of law. See Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." See Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

### B. The ALJ's decision is not supported by substantial evidence.

Thomas argues the ALJ failed to properly weigh the medical evidence of record, which requires remand for further administrative proceedings. Thomas contends the ALJ should have given weight to the opinions of Thomas's treating physicians, Dr.

Leglue and Dr. Drerup. In a related argument, Thomas contends the ALJ's finding as to her residual functional capacity is unsupported by substantial evidence.

The ALJ stated he gave little weight to Dr. Leglue's opinion that Thomas cannot work because Thomas never underwent intensive physical therapy or surgery for neck and back pain; no other treating physician or clinician found Thomas could not work; Dr. Leglue relied at least partially on Thomas's subjective complaints without questioning their reliability; Dr. Leglue did not reveal significant clinical or diagnostic abnormalities; Dr. Leglue appears to be sympathetic to Thomas; and it is not clear that Dr. Leglue is familiar with the terminology in the SSA and regulations (Doc. 9-1, p. 20/381). The ALJ concluded that Dr. Leglue's opinion was inconsistent with the record and the results of his own treatment records, so it was given little weight (Doc. 9-1, p. 20/381).

The ALJ did not mention Dr. Drerup in his opinion. The ALJ either failed to realize or ignored the fact that Dr. Drerup provided objective MRI evidence that Thomas has two herniated disks, which supports Dr. Leglue's opinion. Therefore, the ALJ erred in finding Dr. Leglue's opinion is supported solely by Thomas's subjective complaints.

The ALJ also rejected the opinion of the consulting physician, Dr. Dzurik, who found Thomas can perform no more than sedentary work[5] (Doc. 9-1, pp. 21-22/381). The ALJ stated Dr. Dzurik's opinion was based on hip pain from a gunshot wound

---

[5] It is noted that Dr. Dzurik did not have the benefit of reviewing Dr. Drerup's medical records.

14

that was shown to be nonsevere, and concluded the record did not support the limitation to sedentary work (Doc. 9-1, p. 22/381).

The ALJ did not rely on the opinion of any physician. Instead, he made his own medical findings and substituted his own opinion for that of the treating and consulting doctors, and found Thomas can perform the full range of light work. No physician found Thomas can perform the full range of light work.

ALJs have been cautioned by the courts against "playing doctor" and making their own independent medical assessments. Frank v. Barnhart, 326 F.3d 618 (5th Cir. 2002). An ALJ does not have the medical expertise to substitute his opinion as to the nature of a claimant's medical complaints for those of the treating and consulting physicians. See Frank v. Barnhart, 326 F.3d 618 (5th Cir. 2002); Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990), cert. den., 502 U.S. 901 (1991); see also Frank v. Barnhart, 326 F.3d 618 (5th Cir. 2002). Moreover, while the ALJ may choose to reject a physician's opinion, the ALJ cannot independently decide the effect of Thomas's impairments on her ability to work. See Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1995) (ALJ erred in finding Ripley could perform the full range of sedentary work where there was no medical evidence supporting that conclusion); see also Williams v. Astrue, 355 Fed. Appx. 828, 831 (5th Cir. 2009) (ALJ impermissibly relied on his own "medical opinion" as to Williams' limitations where no evidence supported the ALJ's finding that Williams can stand or walk for six hours in an eight hour day).

None of the medical evidence or testimony in the record supports the ALJ's findings and conclusion that Thomas has the residual functional capacity to perform

the full range of light work. Therefore, the ALJ's decision is not supported by substantial evidence, and Thomas was prejudiced by the ALJ's errors.

Since substantial evidence does not support the conclusions of the ALJ and the Appeals Council, their decision is incorrect as a matter of law. However, this does not entitle Thomas to a decision in her favor based upon the existing record. The record is simply inconclusive as to whether there are any jobs existing in sufficient numbers in the national economy which Thomas can perform given her true impairments. Therefore, Thomas's case should be remanded to the Commissioner for further proceedings.

### C.   Residual functional capacity

Thomas also contends the ALJ's hypothetical questions to the VE were erroneous, and the ALJ's reliance on the VE's testimony was error requiring remand for further administrative proceedings.

The only hypothetical posed to the VE by the ALJ was whether a claimant whose work restrictions were less than sedentary could do Thomas's past work. The VE responded that such an individual could not do any work. The ALJ ultimately rejected those limitations. The ALJ did not pose a hypothetical that supports his findings and conclusions. Therefore, contrary to Thomas's assertion, the ALJ did not rely on the VE's testimony.

### III.   Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be VACATED and that Thomas's case be REMANDED

16

to the Commissioner for further proceedings consistent with the views expressed herein.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __7th__ day of December, 2017.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge